FIRST NATIONAL BANK OF LAKE LINDEN v. CONDON.[1]

FRAUDULENT CONVEYANCES — INADEQUATE CONSIDERATION — EVIDENCE.

A decree subjecting to an execution against a married man property conveyed by him to his wife, to the extent that the value of the property exceeded, in the opinion of the circuit judge, the consideration furnished by the wife, was reversed; the court being of opinion that the finding on which the decree was based, that the consideration was grossly inadequate, was not justified by the evidence.

Appeal from Houghton; Haire, J., presiding.   Submitted November 16, 1899.   Decided December 21, 1899.

[1] Rehearing denied April 24, 1900.

Bill by the First National Bank of Lake Linden and the First National Bank of Calumet against William Condon, Annie Condon, and others, in aid of execution. From a decree against defendants William and Annie Condon, the latter appeals. Reversed.

*Chadbourne & Rees,* for complainants.

*Gray & Looney* (*B. M. Thompson,* of counsel), for appellant.

HOOKER, J. The complainants were judgment creditors of William Condon, and filed the bill in this case in aid of several executions which had been levied on the lands involved herein, to set aside deeds of the land from said William Condon to several relatives. At the hearing in the circuit court the bill was dismissed as against all of the defendants except William Condon and his wife, Annie Condon, and she only has appealed.

William Condon was engaged in business in the village of Hancock previous to 1896, and became involved. At that time he was owner of considerable land and other property, most of it being incumbered. Among his creditors was his wife, whose claim is shown to have amounted to over $10,000, and his daughter, whose claim was upwards of $3,000. Among the lands held by Condon was an undivided four-sixths interest in the following, viz., the N. E. ¼ of the N. W. ¼, and the S. W. ¼ of the N. W. ¼, and a few acres in the N. E. corner of the S. E. ¼ of the N. W. ¼, of section 27, adjoining the village of Hancock on the west. The testimony was taken in open court, and shows that Mrs. Condon was apprised of her husband's failing circumstances, and urged him to pay or secure the amount that he owed to her and to the daughter, and he promised to do so, and upon August 16, 1896, he made the deeds attacked. We need not concern ourselves with the conveyance to the daughter. Mr. Condon testified that at the time he figured the interest upon his wife's claim, and found due her $8,981.65 (though later

he found that it should have been $10,672.14), and that he figured and estimated the value of the four-sixths interest in the lands mentioned, and found that to be $6,558.-34, which sum he inserted in the deed to his wife, as the consideration, and she accepted the deed.   At that time the premises were not platted, being substantially unimproved.   Immediately after the proofs were closed, the learned circuit judge said:

"Gentlemen, I may as well decide this case now as any other time.   *First.* The court finds the indebtedness to Mrs. Condon was *bona fide,* and was something above $6,500, and the indebtedness to Miss Condon was *bona fide,* and was something over $3,000.   It is admitted in the pleadings, and in the testimony of Mr. Condon, that he was insolvent at the time he made the conveyances in question in this case; and the only question that this court will have to decide is whether the consideration named in the deeds to Mrs. and Miss Condon, respectively, was inadequate,—grossly inadequate.   If it was, for all above that amount the conveyance will be deemed to have been voluntary, and must go to the creditors.   If it was an adequate consideration,—a fairly adequate consideration, —the conveyance will stand, and the bill will be dismissed."

This was followed by a short discussion of the facts, from which he concluded that the interest was deeded to the wife for half what it was worth, which sum he held to be a grossly inadequate consideration.   The case seems to turn upon the value of the premises; for it appears to be conceded that Condon might lawfully prefer his wife's *bona fide* debt.

After deeding this property, Condon was given a power of attorney from his wife and daughter to sell it.   In August, 1897, the N. E. 40 acres, and the fraction of the S. E. 40 acres, were platted, and the streets were graded at an expense of $1,000 or upwards, and the lots went upon the market.   But few lots were sold, as sales ceased in October, 1897, owing to this litigation; that being the time complainants' levy was made.   Condon testified that he and Mr. Gray, his solicitor, made up the figures upon

the property. Some lots in West Hancock and First addition were conveyed to her. Of these, a number were subject to land contracts. He figured these on the basis of amount unpaid, and they amounted to $762.50; others were not incumbered, and aggregated $1,575,—making a total of $2,337.50. He deducted two-sixths, which others owned, $779.16; leaving the price $1,558.34 fixed for four-sixths. He placed a value of $5,000 on the four-sixths interest in the two 40-acre parcels, thus making the amount of the consideration mentioned in the deed. Emery testified that he went over the ground a day or two before the trial, in August, 1898, at the request of counsel for complainants, and fixed the value of the unplatted land in 1896 at $250 per acre. This was upon the theory that the land was valuable for platting. Upon cross-examination, he said that he was not positive that it could have been sold in 1896 for any such sum as that, but that it was his opinion that it was worth that for platting purposes. He said that he thought that had it then been sold at sheriff's sale, in August, 1896, it would not have brought much, but that it would, in his opinion, have brought more than $7,-500; and added, "The times and conditions in August, 1896, were not as bright as they are now." George Roulisson testified that he accompanied Emery for the purpose of estimating the value, and said, in substance, that they agreed upon Emery's estimate. A. J. Scott was supervisor of Hancock township in 1896, in which the land lies. He placed the value of the N. E. ¼ at $2,000, and the S. W. ¼ between $3,000 and $4,000. William H. Roberts testified that the N. E. ¼ was worth not over $60 an acre in 1896, and the S. W. ¼ $75 or $80 an acre. He had experience in platting and trying to sell lots upon an adjoining parcel, in 1896, upon which he based his opinion. It appears in the record that, in 1892, Joseph H. Chandler and the executrix of Charles E. Holland each sold an undivided sixth of all of this property for $500, and it was shown that the land did not increase in value much from 1892 to 1896.

Thus, we have the testimony of Condon, Scott, and

Roberts, who testify that the value was $7,500 or below, added to the fact of actual sales a few years before on a basis of $3,000, against the testimony of Emery and Roulisson, who examined the land a day or two before the trial, and who state that in 1896 it might not have been possible to find a purchaser for any such price as they estimate the land to be worth. The circuit judge seems to have attached much importance to a letter written by Condon to Mr. John E. Jones, cashier of one of the complainants, on September 27, 1897. It is as follows:

"Hancock, Michigan, September 27, 1897.
"Mr. John E. Jones, Cashier,
                "Lake Linden, Michigan.
   "*Dear Sir:* You hold two notes made by me, amounting to about $10,000; also one note of my son's for about $700, indorsed by me; also note or notes aggregating about $———, made by O. W. Robinson and indorsed by me; also a note made by W. B. Northrup, on which there is a balance due of about $3,063, indorsed by me and others, which has been paid by new notes of W. B. Northrup and James A. Close, Jr. I also understand that you suppose something to be due from me to Mr. James A. Close, as trustee in certain stock matters. You hold an insurance policy on my life for $10,000 as collateral security for certain of the above obligations, on which there is now a cash surrender value of about $1,200, as stated by you, and an ultimate endowment value of about $12,500. I make you the following proposition in settlement of all the above obligations, and all claims or demands of every kind held by you against me, viz.: There has recently been platted and recorded by my wife and daughters certain territory in the outskirts of the village of West Hancock, known as 'Condon's Second Addition to the Village of West Hancock.' My wife and daughters have expressed a willingness to aid me to some extent in my financial troubles, and I think will consent to convey to you, in full settlement of my obligations above stated and referred to, blocks numbered 16 and 21 of said addition, comprising 46 lots. The inside lots (38) are now selling at $200 each, and the corner lots (8) at $300 each. The town is growing rapidly out towards these lots, and no doubt in time you will realize out of the same

your claim against me with interest.   This proposition is on the condition that you surrender back to me all your claim and interest in said policy of insurance.   Awaiting your reply, I remain,

"Very truly yours,
"WM. CONDON."

To our minds, this is not very conclusive evidence. Soon afterwards a levy was made upon these lands.   It is significant that the complainants took no steps to attach the property at or about the time the transfer was made. After times got better, and the village became prosperous, and the land had been platted and streets graded, it was easy to see that it was possible to get more money out of the lánd than Mrs. Condon paid for it.   Then they levied, and filed this bill.   We think the preponderance of the proof shows that it was not deeded to Mrs. Condon for a grossly inadequate sum, and that the bill should have been dismissed.

The decree is reversed and the bill dismissed, with costs of both courts.

The other Justices concurred.